```
David N. Chandler, Sr.   SBN 60780
David N. Chandler, Jr.   SBN 235427
DAVID N. CHANDLER, p.c.
1747 Fourth Street
Santa Rosa, CA  95404
Telephone: (707) 528-4331

Attorney for Debtor
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | CASE No. 10-11533 |
| NAVJOT, LLC, | CHAPTER 11 |
| ___Debtor._____/ | <u>AMENDED DISCLOSURE STATEMENT</u> |

I

A. <u>INTRODUCTION.</u>

Navjot, LLC, hereafter referred to as "Debtor" submits this Amended Disclosure Statement to all of its known creditors and interest holders entitled to same pursuant to section 1125 of the United States Bankruptcy Code ll U.S.C. Section 101, et seq. ("the bankruptcy code").  The purpose of this Disclosure Statement is to provide creditors of the debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Debtor's Chapter ll Plan(the "Plan") described below.  The Debtor's Chapter ll Plan has been filed with this Court.

NO REPRESENTATIONS CONCERNING THE DEBTOR (INCLUDING THE VALUE OF ASSETS, ANY PROPERTY AND CREDITORS CLAIMS)INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED.  Except as otherwise expressly stated, the portions of this Disclosure

Statement describing the Debtor and the Plan have been prepared from information obtained from the Debtor.

Under the Plan, Secured claims, to the extent allowed as secured claims pursuant to 11 U.S.C. Section 506, and to the extent of the validity of the security interest is determined by the Court and not otherwise avoidable will be paid in full, or, otherwise, shall retain the real property collateral in full satisfaction of said allowed claim. Unsecured claims shall be paid the aggregate sum of $147,000.00, in 18 quarterly installments.

A Chapter 7 liquidation could take up to three years before distribution is made, if any, and additional Administrative expenses would be incurred. Tax consequences of liquidation, expenses of sale, professional fees and trustee's fees are administrative expenses in a Chapter 7 liquidation are paid before prepetition claims are paid. Administrative expenses of Chapter 11 are also paid prior to payment of prepetition claims. Liquidation of development property is simply not practical or feasible at the current time. Debtor estimates that the percentage which would be available to unsecured creditors upon liquidation of the assets in a Chapter 7 case is 3%. The estimate is based upon Debtor's analysis of liquidation which is set forth in Exhibit A hereto.

B. <u>FILING OF REORGANIZATION CASE</u>.

On April 27, 2010, the Debtor filed its petition pursuant to Chapter 11 of the Bankruptcy Code. Since that time the Debtor has remained in possession of the property as debtor in possession.

C. <u>MANNER OF VOTING</u>.

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and

2

Case 10-11533   Doc# 108   Filed: 09/03/10   Entered: 09/03/10 18:02:31   Page 2 of 17

causing the Ballot Form accompanying this Disclosure Statement to be sent to the Debtor's counsel prior to the date set by the Court for the filing of such ballots.

   D.   CONFIRMATION OF THE PLAN.

      1.   Solicitation of Acceptance.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with section 1125 of the bankruptcy code and is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a Proof of Claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. The Disclosure Statement is intended to assist creditors and interest holders in evaluating the Plan and in determining whether to accept the Plan. Under the bankruptcy code, acceptance of the Plan may not be solicited unless a copy of this Disclosure Statement is received prior to or concurrently with such solicitation.

      2.   Persons Entitled to Vote on Plan.

Only the votes of Classes of claimants and interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan. Generally and subject to the specific provisions of bankruptcy code section 1124, this includes creditors who, under the Plan, will receive less than payment in full of their creditor's claims.

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the debtor, as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation, has filed with the court a Proof of Claim which has not been disallowed or suspended prior to

3

computation of the votes on the Plan. The Ballot form which you receive does not constitute a Proof of Claim. If you are in any way uncertain whether or not your claim has been correctly scheduled, you should review the Debtor's schedules which are on file in the Bankruptcy Court. The clerk of the Bankruptcy Court will not provide this information by telephone.

          3.   <u>Hearing on Confirmation of the Plan.</u>

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and interest holders and whether the other requirements of confirmation of the Plan have been satisfied. Each creditor and interest holder will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

          4.   <u>Acceptance Necessary to Confirm Plan.</u>

At the scheduled hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired Class. Under bankruptcy code section 1125 an impaired Class is deemed to have accepted the Plan if at least two thirds in amount and more than one-half in number of the allowed claims or interest of Class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired Class, the Bankruptcy Court must also determine that under the Plan Class members will receive property of a value, as of the effective date of the Plan, that is not less than the amount that such Class members would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

4

## 5. Confirmation of the Plan Without Necessary Acceptance.

The Plan may be confirmed even if it is not accepted by one or all of the impaired Classes, if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such Class or Classes.

## II

### A. DESCRIPTION OF DEBTOR AND HISTORICAL BACKGROUND.

Surinder Pal Sroa, native of India, and principle of the Debtor herein, started as a restaurant entrepreneur opening his first restaurant in 1998 and now operating four restaurants, 3 Indian and one American. The income generated from the restaurant operations enabled Mr. Sroa to meet any negative cash flow encountered by the Debtor herein until mid-2008 when the economic environment began to change.

The apartment building, 355 Canal Street, was purchased by the Debtor in 2000. The building was in extremely poor condition. Over $500,000 was required to get the building into a servicable condition. This was the initial foray of the Debtor and/or Mr. Sroa into apartments.

Mr. Sroa opened a home furnishing store in January, 2005. Debtor purchased the building in which the store operated at 854 4th Street, San Rafael. The business proved unprofitable and was closed in 2006. The building remained partially vacant, but equity contributions to maintain the mortgage payments were made.

In 2005, Mr. Sroa met Kirt Menon of Argentum Investments. Mr. Menon, a licensed financial advisor and real estate broker, had frequented one of the restaurants and engaged Mr. Sroa in

5

discussions as to how to expand the Debtor's property portfolio in then what was a rising market. In March, 2005, Mr. Menon sold to Mr. Sroa a property. Thereafter, the transactions with Mr. Menon caused Mr. Sroa and the Debtor a myriad of problems.

Menon misrepresented the property at 901 Lincoln which the Debtor purchased. The upper four units were unpermitted and there was no disclosure. The property at 714-716 4th Street was misrepresented and was impacted by dry rot and mold. Menon arranged a loan from his client, Elbert Branscomb, for the purpose of making renovations on the properties.

Beginning in 2008, property values began to plummet. Refinancing was not an option. Menon was arrested and convicted of crimes relating to his activities as a financial advisor and broker. Branscomb brought suit against Debtor based upon a note which is irregular in form and provides for $600,000 despite the fact that only $100,000 was loaned. Debtor contends that Menon concocted the form of the note to conceal his misdeeds in his management of funds on behalf of his client, Branscomb.

In September, 2009, Debtor purchased 807 Grant Street, Novato with private financing. The financing was refinanced with Redwood Credit Union in April, 2010 after an agreement had been made to pay $5,000 per month on the Branscomb obligation until title and priority was resolved. The March check was cashed by Branscomb and immediately thereafter, Branscomb moved to take over 355 Canal and 901 Lincoln. The Debtor endeavored to resolve the problem without use of Chapter 11 but was unable to do so.

The within case was filed to protect the assets of the Debtor and the interests of the creditors in the assets. Debtor has

6

obtained permission for the use of cash collateral and continues to segregate same and apply same only as authorized in the orders. Debtor proposes to surrender some of the assets in a manner which will protect the interests of all creditors and to retain only the properties which produce revenue in excess of the debt service to permit a dividend to unsecured creditors.

Liquidation of the assets of the estate would likely result in no distribution to unsecured creditors pursuant to the Liquidation Analysis prepared by the Debtor based upon opinion of the Debtor which is attached hereto as Exhibit A.

B. <u>THE PLAN.</u>

The Plan divides claims and interests into sixteen (16) classes. The classes consist of the following:

<u>Class 1 Claims.</u> Allowed claims entitled to priority pursuant to Section 507 of the Code.

<u>Class 2 Claims.</u> Allowed secured claims of the County of Marin based upon the secured tax roll and secured by real property located at:

    a. 355 Canal St., San Rafael, CA;
    b. 714-716 Fourth St., San Rafael, CA;
    c. 854-860 Fourth St., San Rafael, CA;
    d. 901 Lincoln St., San Rafael, CA;
    e. 807 Grant St., Novato, CA; and
    f. 809-813 Grant St., Novato, CA.

<u>Class 3 Claims.</u> Allowed secured claims of Circle Bank secured by real property located at 714-716 Fourth St., San Rafael, CA.

<u>Class 4 Claims.</u> Allowed secured claim of Marin Mortgage Bankers secured by real property located at 714-716 Fourth St., San

7

Rafael, CA.

<u>Class 5 Claims.</u> Allowed secured claims of Circle Bank secured by real property located at 809-813 Grant, Novato, CA.

<u>Class 6 Claims</u>. Allowed secured claims of Marin Mortgage Bankers secured by real property located at 809-813 Grant, Novato, CA.

<u>Class 7 Claims.</u> Allowed secured claim of Redwood Credit Union secured by real property located at 807 Grant, Novato, CA.

<u>Class 8 Claims.</u> Allowed secured claim of Margaret Enevold secured by real property located at 901 Lincoln St., San Rafael, CA.

<u>Class 9 Claims.</u> Allowed secured claim of Elbert Branscomb secured by real property located at 901 Lincoln St., San Rafael, CA.

<u>Class 10 Claims.</u> Allowed secured claim of JP Morgan Chase secured by real property located at 355 Canal St., San Rafael, CA.

<u>Class 11 Claims.</u> Allowed secured claim of Elbert Branscomb secured by real property located at 355 Canal St., San Rafael, CA.

<u>Class 12 Claims.</u> Allowed secured claim of Marin Mortgage Bankers secured by real property located at 355 Canal St., San Rafael, CA and cross collateralized by real property located at 714-716 Fourth St., San Rafael, CA.

<u>Class 13 Claims.</u> Allowed secured claim of JP MorganChase secured by real property located at 854-864 Fourth St., San Rafael, CA.

<u>Class 14 Claims.</u> Allowed secured claim of Marin Mortgage Bankers secured by real property located at 854-864 Fourth St., San Rafael, CA.

8

Class 15 Claims. Allowed claims of creditors other than those holding allowed Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Class 5 Claims, Class 6 Claims, Class 7 Claims, Class 8 Claims, Class 9 Claims, Class 10 Claims, Class 11 Claims, Class 12 Claims, Class 13 Claims, Class 14 Claims, and Class 16 Interests, including, but not limited to, creditors whose claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court finds the same unsecured in whole or in part.

Class 16 Interests. Allowed interests of the members of the Debtor herein.

The Plan treats the classes as follows:

Class 1 Claims are not impaired. Holders of allowed Class 1 Claims shall be paid in full on the effective date of the Plan. There are no known claims in this class.

Class 2 (a through d) Claims are impaired. Holders of allowed Class 2 a through d Claims shall retain their liens in the collateral and may, upon the effective date, exercise such holders' rights in the collateral. No distribution will be made on account of such claims.

Class 2 (e and f) Claims are not impaired. Holders of allowed Class 2e and f Claims shall be paid in cash and in full and on a current basis upon the effective date of the Plan. Class 2 a through d are impaired as provided herein.

Class 3 Claims are impaired. Holders of allowed Class 3 Claims shall retain the real property collateral to such holder in full satisfaction of the allowed claim. Such holder shall retain the lien securing said allowed claim and shall, on the effective

9

date, be entitled to enforce its rights to the real property collateral.

 <u>Class 4 Claims are impaired.</u>  Holders of allowed Class 4 Claims shall retain the real property collateral to such holder in full satisfaction of the allowed claim.  Such holder shall retain the lien securing said allowed claim and shall, on the effective date, be entitled to enforce its rights to the real property collateral.

 <u>Class 5 Claims are impaired.</u>  Holders of allowed Class 5 Claims shall be paid the allowed secured claim in monthly installments of principle and interest at a market rate based upon a fully amortized payment over 30 years, all due five years from the effective date.  Such holder shall retain its security interest in the said real property.

 <u>Class 6 Claims are impaired.</u>  Holders of allowed Class 6 Claims shall be paid an amount equal to such holder's interest in the Debtors' interest in the collateral in monthly installments of principle and interest at a market rate calculated and payable on a 30 year amortization.  Debtor shall have the right to pre-payment any portion of interest or principal without penalty. Such holder shall retain the security interest in the collateral.

 <u>Class 7 Claims are impaired.</u>  Holders of allowed Class 7 Claims shall be paid the payments as provided in the note at the rate of interest as provided therein. Jyoti, Inc., an affiliate of the Debtor, may elect to sell or close the business which such affiliate operates on the real property collateral. Alternatively, Surinder Pal Sroa, may elect to sell the shares of Jyoti, Inc. as part of a personal restructure of assets and liabilities.  Debtor

10

may lease the real property collateral to a third party in conjunction with the sale of the business or independently. Such holder shall retain its security interest in the collateral.

<u>Class 8 Claims are impaired.</u> Holders of allowed Class 8 Claims shall retain the real property collateral to such holder in full satisfaction of the allowed claim. Such holder shall retain the lien securing said allowed claim and shall, on the effective date, be entitled to enforce its rights to the real property collateral.

<u>Class 9 Claims are impaired.</u> Holders of allowed Class 9 Claims shall retain the real property collateral to such holder in full satisfaction of the allowed claim. Such holder shall retain the lien securing said allowed claim and shall, on the effective date, be entitled to enforce its rights to the real property collateral.

<u>Class 10 Claims are impaired.</u> Holders of allowed Class 10 Claims shall retain the real property collateral to such holder in full satisfaction of the allowed claim. Such holder shall retain the lien securing said allowed claim and shall, on the effective date, be entitled to enforce its rights to the real property collateral.

<u>Class 11 Claims are impaired.</u> Holders of allowed Class 11 Claims shall retain the real property collateral to such holder in full satisfaction of the allowed claim. Such holder shall retain the lien securing said allowed claim and shall, on the effective date, be entitled to enforce its rights to the real property collateral.

<u>Class 12 Claims are impaired.</u> Holders of allowed Class 12

11

Case: 10-11533   Doc# 108   Filed: 09/03/10   Entered: 09/03/10 18:02:31   Page 11 of 17

Claims shall retain the real property collateral to such holder in full satisfaction of the allowed claim.  Such holder shall retain the lien securing said allowed claim and shall, on the effective date, be entitled to enforce its rights to the real property collateral.

Class 13 Claims are impaired.  Holders of allowed Class 13 Claims shall retain the real property collateral to such holder in full satisfaction of the allowed claim.  Such holder shall retain the lien securing said allowed claim and shall, on the effective date, be entitled to enforce its rights to the real property collateral.

Class 14 Claims are impaired.  Holders of allowed Class 14 Claims shall retain the real property collateral to such holder in full satisfaction of the allowed claim.  Such holder shall retain the lien securing said allowed claim and shall, on the effective date, be entitled to enforce its rights to the real property collateral.

Class 15 Claims are impaired.  Holders of allowed Class 15 Claims shall be paid up to the amount of $67,000 in seventy two equal monthly installments on a prorata basis.  Distributions shall be made at intervals no less frequently than quarterly.  Such payments shall commence on the effective date of the Plan.

Class 16 Interests are impaired.  Holders of allowed Class 16 Interests shall retain such interests subject to the terms and conditions of the Plan.  Such holders shall contribute up to the sum of $38,000 required for payment of expenses of administration and payment of Class 1 Claims and the initial installment on Class 1, 2 e and f Claims as provided herein.

12

THE PLAN PROVIDES FOR THE MEANS OF EXECUTION AS FOLLOWS:

1. Debtors shall surrender the real property collateral to the following classes of creditors in full satisfaction of the Debtor's liability to the respective holders upon the effective date of the Plan:

    a. Holders of Class 3 Claims;
    b. Holders of Class 4 Claims;
    c. Holders of Class 8 Claims;
    d. Holders of Class 9 Claims;
    e. Holders of Class 10 Claims;
    f. Holders of Class 11 Claims;
    g. Holders of Class 12 Claims;
    h. Holders of Class 13 Claims; and
    i. Holders of Class 14 Claims.

2. Debtor shall continue to collect the monthly rents from retained properties and apply same to expenses of operation and to the debt secured by the properties. Debtor may elect to apply excess revenue from one property to secured indebtedness on another property or unsecured indebtedness so long as not in default under the terms of the within Plan.

3. Debtor will place any defaulted secured real property taxes as described in Class 2 e and f on a five year payment plan with the County of Marin unless the property is sold or refinanced in which instance, such claims shall be paid on the closing date of such sale or refinance. Class 2 a through d Claims will not be placed on a five year plan and will not be paid by the reorganized Debtor.

4. Unsecured creditors shall be paid the aggregate sum of

$67,000 in 18 quarterly installments. Debtor may elect to pay more or on more frequent intervals based upon cash available. Distributions to holders of allowed Class 15 Claims shall be paid on intervals no less frequent than quarterly. Debtors shall pay from excess rents, sale or refinance proceeds of any one or more of the properties, or additional cash contributions from Class 25 Interests. Deposits into a disbursing account shall commence on the effective date of the Plan and shall be made monthly.

5. Pre-confirmation defaults as to Class 5 shall be cured by monthly payments equal to 1/60th of the arrearage paid each month to such holder.

6. Debtor shall commence payments to holders of allowed Class 6 Claims pursuant to the terms of the plan on the effective date of the Plan. Debtor's affiliate may sell the business operated on the real property collateral without acceleration or default. The share of Jyoti, Inc. may be sold or transferred without acceleration or default.

7. Debtor reserves the right to bring Motions pursuant to 11 U.S.C. Section 506 to determine the value of the real property collateral. Such Motion(s) shall be brought within 90 days of the effective date of the Plan. The said limit shall be subject to extension by order of the Court upon motion by the Debtor.

8. All claims and causes of action against Elbert Branscomb, Kirt Menon, Elbert Branscomb, agents and attorneys, and Cal Land Title are specifically reserved.

9. No party shall take any action against the Debtor, its assets, or assets of the estate inconsistent with the terms of the within Plan.

14

10. The Debtor shall comply with post confirmation reporting requirements to the U.S. Trustee and payment of U.S. Trustee fees post confirmation until entry of Final Order as required by law. Nothing contained in the Plan shall impose or expand the requirements for reporting and payment of fees as set forth by statute and/or case law. In the event the case is converted to a case under Chapter 7, the assets shall revest in the Chapter 7 estate. Debtor shall be the disbursing agent absent appointment of another person or entity by the Court at the time of confirmation.

11. Debtor may object to claims as appropriate and all rights of counterclaim and setoff as to any party filing a claim against the estate are specifically reserved.

12. Debtor reserves the following claims/causes of action:

   a. Kirt Menon. Claim for contribution, negligence, fraud, breach of fiduciary duty, breach of contract, avoidance pursuant to Section 544.

   b. Elbert Branscomb. Claim for contribution, negligence, fraud, breach of fiduciary duty, breach of contract, avoidance pursuant to Section 544, determination of nature, extent and priority of liens.

   c. JP Morgan Chase. Determination of priority of liens.

   d. Cal Land Title. Breach of contract, fiduciary duty, fraud, conversion, slander of title.

   e. Marin Mortgage Bankers. Nature, extent and priority of liens.

IV

Circle Bank, Class 5 creditor herein, by its counsel has

15

provided the following additional information which it insists upon adding to the within Disclosure, some, or all, of which does not express the opinion of the Debtor and/or is disputed by the Debtor and is insisted upon to serve the sole interests of Circle Bank which interest is not necessarily consistent with the interests of other creditors:

"1.  Debtor is not providing ay projections, budgets or pro forma statements which would allow the creditors to determine whether the Plan is feasible.
2.  Debtor's proposal to modify any existing notes to a "market rate" will require an evidentiary hearing and may require the parties affected by a "market rate" adjustment to engage experts to provide opinion testimony in order to facilitate the Court's determination of "market rate" as required in *Till* and applicable law.
3.  The Debtor is not offering any opinion as to the merits, the magnitude, or collectability of any claims or prospective litigation against Messers. Menon, Banscomb or any other third parties."

V

The assets and liabilities of the Debtor are set forth in the Debtor's Schedules, on file with the Court.  The Proponent believes that the terms of the Plan are feasible, and that it will be able to perform under the Plan.  The Debtor requests confirmation of the Plan.

Dated: 9/3/10                    DAVID N. CHANDLER, p.c.


                                 By: */s/David N. Chandler*
                                 DAVID N. CHANDLER
                                 Attorney for Debtor

16

LIQUIDATION ANALYSIS
(Exhibit A)

| Asset | Value | Encumbrance | Net |
|---|---|---|---|
| 335 Canal St. San Rafael, CA | 6,450,000* | 6,420,086** | 29,914* |
| 714-716 Fourth St. San Rafael, CA | 1,050,000 | 631,254** | 418,746** |
| 901 Lincoln St. San Rafael, CA | 850,000 | 1,399,228 | -0- |
| 897 Grant St. Novato, CA | 1,450,000 | 1,210,256 | 239,744 |
| 809, 811, 813 Grant St., Novato | 1,270,000 | 1,272,232 | -0- |
| Navjot v. Menon | Unknown | -0- | Unknown |
| | | Total | $239,744 |

Expenses of Administration:
    Chapter 11:
      Attorneys fees    $38,000
      Accounting Exp.   10,000
      OUST Fees        3,000
      Brokerage Comm    87,000
      Expenses of Sale  10,000
      Secured Taxes    22,000
    Chapter 7:
      Trustee Fees     20,000
      Attorneys Fees    25,000
      Accounting Fees   10,000

                                                                                          <225,000>

Net Available for Distr.    $14,744

$$\frac{\$14,744}{561,820} = 3\% \quad \text{Estimated Chapter 7 dividend}$$

\* Priority and extent of secured claims in dispute. Costs of litigation have been determined to be impractical.
\*\* Cross collateralized in favor of Marin Mortgage securing over $1M.